### In re Joseph BORDEN.

### No. 96–1057.

United States Court of Appeals, Federal Circuit.

July 24, 1996.

Rehearing Denied Sept. 17, 1996.

---

Michael J. Sweedler, Darby & Darby, New York City, argued for appellant. With him on the brief was Kwadjo Adusei–Poku.

Linda Moncys Isacson, Associate Solicitor, Patent and Trademark Office, Arlington, VA, argued for the Commissioner of Patents and Trademarks. With her on the brief were Nancy J. Linck, Solicitor, Washington, DC, Albin F. Drost, Deputy Solicitor, Beacon Falls, CT, and Linda M. Skoro, Associate Solicitor, Gainesville, FL.

Before RADER, Circuit Judge,
SKELTON, Senior Circuit Judge and
BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

Joseph Borden appeals from a decision of the Patent and Trademark Office Board of Patent Appeals and Interferences, which sustained the examiner's rejection of Borden's application for a design patent as obvious under 35 U.S.C. § 103. We affirm.

I

Borden filed a patent application on August 15, 1989, claiming an "Ornamental Design for a Twin Neck Dispensing Container." The claimed design is reproduced below in Figure 1.

Fig. 1 -- Borden

The claimed design comprises an oval-shaped main chamber with a cylindrical spout extending upward from one end, a cubical measuring chamber suspended by a thin laminate above the other end of the main chamber, and a filling tube extending along the spine of the container and connecting the main chamber to the measuring chamber.

The examiner relied on three references in the prior art to find the claimed design obvious. The designs set forth in those three references are reproduced below in Figures 2, 3, and 4.

Fig. 2 -- Bettix

Fig. 3 -- Freshn Tea

Fig. 4 -- Costa

In analyzing the issue of obviousness, the examiner identified as the basic reference a twin-neck container depicted on the cover of a Bettix Dispensing Containers brochure (the "Bettix container"). Figure 2 is a drawing of the Bettix container prepared by Borden's draftsman for this appeal. Like the claimed design, the Bettix container features an oval-shaped main chamber with a cylindrical spout, a small measuring chamber suspended by a thin laminate above the main chamber and adjacent to the cylindrical spout, and a filling tube running along the spine of the container and connecting the two chambers.

The differences between the Bettix container and the claimed design reside solely in the shape of the small chamber. First, the small chamber of the Bettix container flares outward near its top surface, whereas the small chamber of the claimed design has straight sides. Second, the small chamber of the Bettix container is rectangular and is narrower than the main chamber, while the small chamber in Borden's claimed design is cubical and is as wide as the main chamber at its widest point.

The examiner identified two secondary prior art references that disclosed small chambers having the characteristics missing from the Bettix design. A container found in the Bettix Dispensing Containers brochure and labeled "Freshn Ice Tea" (Figure 3 above) has a cubical small chamber with straight sides, rather than the flared sides of the basic Bettix container. In addition, the small chamber in U.S. Design Patent No. 292,268 to Costa (Figure 4 above) is as wide as the main chamber at its widest point.

The examiner regarded all three references as pertinent art and concluded that the modifications to the basic reference necessary to derive the claimed design would have been obvious to a container designer of ordinary skill. The examiner further concluded that the differences between the Bettix container and appellant's design had little or no effect on the overall appearance of the design. Based on those findings, the examiner concluded that the claimed design was unpatentable for obviousness.

The Board of Patent Appeals and Interferences affirmed the examiner's rejection of the claimed design as unpatentably obvious over the Bettix container in view of the Freshn Tea and Costa designs. On Borden's request for reconsideration, the Board stood by its initial decision. This appeal followed.

## II

■ Under 35 U.S.C. § 171, a patent may be obtained for a "new, original and ornamental design for an article of manufacture." Design patents are subject to the same conditions on patentability as utility patents, including the nonobviousness requirement of 35 U.S.C. § 103. *L.A. Gear, Inc. v. Thom McAn Shoe Co.,* 988 F.2d 1117, 1124, 25

USPQ2d 1913, 1917 (Fed.Cir.), *cert. denied,* 510 U.S. 908, 114 S.Ct. 291, 126 L.Ed.2d 240 (1993); *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.,* 853 F.2d 1557, 1563, 7 USPQ2d 1548, 1553 (Fed.Cir.1988).

■ The central inquiry in analyzing an ornamental design for obviousness is whether the design would have been obvious to "a designer of ordinary skill who designs articles of the type involved." *Avia Group,* 853 F.2d at 1564, 7 USPQ2d at 1554; *In re Nalbandian,* 661 F.2d 1214, 1216, 211 USPQ 782, 784–85 (CCPA 1981). That inquiry focuses on the visual impression of the claimed design as a whole and not on selected individual features. *Petersen Mfg. Co. v. Central Purchasing, Inc.,* 740 F.2d 1541, 1548–49, 222 USPQ 562, 567–68 (Fed.Cir.1984); *In re Rosen,* 673 F.2d 388, 390, 213 USPQ 347, 349 (CCPA 1982).

■ In order for a design to be unpatentable because of obviousness, there must first be a basic design reference in the prior art, "a something in existence, the design characteristics of which are basically the same as the claimed design." *In re Rosen,* 673 F.2d at 391, 213 USPQ at 349; *see In re Harvey,* 12 F.3d 1061, 1063, 29 USPQ2d 1206, 1208 (Fed.Cir.1993). A finding of obviousness cannot be based on selecting features from the prior art and assembling them to form an article similar in appearance to the claimed design. *In re Jennings,* 37 C.C.P.A. 1023, 182 F.2d 207, 208, 86 USPQ 68, 70 (1950) (the claimed design "must be compared with something in existence, not with something that might be brought into existence by selecting individual features from prior art and combining them"); *see L.A. Gear,* 988 F.2d at 1124, 25 USPQ2d at 1918; *In re Sung Nam Cho,* 813 F.2d 378, 382, 1 USPQ2d 1662, 1664 (Fed.Cir.1987).

■ If the basic reference alone does not render the claimed design unpatentable, design elements from other references in the prior art can be considered in determining whether the claimed design would have been obvious to one of skill in the art. In order for secondary references to be considered, however, there must be some suggestion in the prior art to modify the basic design with features from the secondary references. *L.A. Gear,* 988 F.2d at 1124, 25 USPQ2d at

1917; *In re Rosen*, 673 F.2d at 391, 213 USPQ at 350. That is, the teachings of prior art designs may be combined only when the designs are "so related that the appearance of certain ornamental features in one would suggest the application of those features to the other." *In re Glavas*, 43 C.C.P.A. 797, 230 F.2d 447, 450, 109 USPQ 50, 52 (CCPA 1956); *see also In re Harvey*, 12 F.3d at 1063, 29 USPQ2d at 1208; *In re Sung Nam Cho*, 813 F.2d at 382, 1 USPQ2d at 1663; *In re Rosen*, 673 F.2d at 391, 213 USPQ at 350.

In this case, the Bettix container is a basic design reference because, as the Board held, the design characteristics of that container "are basically the same as the claimed design." We need not decide whether Borden's design would have been obvious in light of the Bettix container design alone, because we are satisfied that the examiner and the Board correctly found Borden's claimed container design to be an obvious variation on the prior art when viewed in light of the Bettix container and certain design features found in the Freshn Tea and Costa containers.

Like the Bettix container, the Freshn Tea and Costa containers are dual-chamber designs. All three have a small chamber in an upper corner of the container. In fact, the Freshn Tea container is listed in the Bettix container brochure as an example of the type of dual-chamber container the manufacturer could create for its customers; the brochure also lists other examples of custom variations, including "neck changes" and changes in the "size of the chamber," precisely the types of variations on the Bettix design that are embodied in the Borden container. The secondary references were thus properly found to be so closely related to the basic design reference "that the appearance of certain ornamental features in one would suggest the application of those features to the other." *In re Glavas*, 230 F.2d at 450, 109 USPQ at 52; *see In re Carter*, 673 F.2d 1378, 1380, 213 USPQ 625 (CCPA 1982) (secondary reference "so closely related that the adoption of features therein for modification of the [claimed] design would be readily suggested"). That is, the secondary references would have suggested to a designer of ordinary skill in the art that the small chamber of the Bettix container could be modified by making its sides straight and making it as wide as the main chamber at its widest point.

Borden argues that the overall appearances of the Freshn Tea and Costa containers are sufficiently different from that of the Bettix container as to negate any suggestion to combine features of their small measuring chambers with the Bettix container to create the claimed design. For support, Borden cites *In re Harvey*, 12 F.3d at 1064–65, 29 USPQ2d at 1209–10. In *Harvey*, the court held that the Board erred in finding a particular reference to be a basic design reference and then went on to state that in any event there was no suggestion to combine the design characteristics of the prior art references. That discussion in *Harvey*, however, does not control this case.

The claimed designs in *Harvey* were vases whose shapes were formed by the intersection of two particular pairs of geometric solids. The court held that the Board was wrong in ruling that nonintersecting bowls and vases in the prior art provided the suggestion to form Harvey's intersecting vases. Under the Board's approach, the court explained, any vase design generated by the intersection of shapes found in the prior art would be obvious, regardless of any differences in the overall appearance of the combined design and the individual prior art shapes. 12 F.3d at 1065, 29 USPQ2d at 1209.

In this case, unlike in *Harvey*, the basic design reference is closely akin to Borden's claimed design, and the secondary references provide the two design elements necessary to bridge the small gap between the Bettix container and Borden's claimed design. Moreover, the two missing design elements are not taken from unrelated references, but are found in other dual-chamber containers. The Board found the secondary references to be so closely related to the Bettix design as to suggest to a container designer of ordinary skill that the small chamber of the Bettix container could be modified in a manner that would make it identical to Borden's design. The Board therefore found that the prior art references did not simply provide a

**1576**

general approach to creating new designs, as in *Harvey,* but taught the two specific design elements that would convert the Bettix reference into appellant's claimed design, and did so in a setting that would suggest the combination to one of skill in the art.

The question of what the prior art teaches is a question of fact subject to review for clear error, *In re Bell,* 991 F.2d 781, 784, 26 USPQ2d 1529, 1531 (Fed.Cir.1993), and we find no clear error in the Board's finding on that issue. We thus conclude that the Board was correct in finding an implicit suggestion to combine references in the prior art and that the Board therefore correctly held Borden's design unpatentable for obviousness.

*AFFIRMED.*